We are happy to have sitting with us by designation today, Judge Bassoon from the Western District of Pennsylvania. So thank you so much for joining us. Our first case for argument is 24-2134, Nike v. lululemon. Come on up. Good morning, your honors. May it please the court, Aaron Bolling on behalf of Nike. The board invalidated Nike's patent in this case by reading one of the most important claim limitations out of the patent. The claims require successive exertion levels based on a user's level of physical fitness. The board replaced that requirement with weight and stride length, despite the fact that lululemon's expert testified that those characteristics, those attributes themselves do not constitute a level of physical fitness. Why is it unreasonable for the board to have interpreted, for example, height and weight as correlated to physical fitness? So I don't think it's unreasonable for them to say that they're correlated to physical fitness, but the claims require the level of physical fitness itself. For example, if we had an SAT score, we could say it's related, it's one component, it's correlated to a college admissions decision, but the SAT score itself is not the admissions decision. It's the same thing here. Does the claim or the specification define or give us guidance on what does it mean to be a level of physical fitness? It gives us guidance, your honor. For example, in column 15, there's a pretty detailed discussion of the easy, medium, and hard prompts, and so in that way, the device is telling the user, run at something that's easy for you, run at something that's medium for you, hard for you. Sure, but that's still a little vague. I think the concern here was, and I think I can understand the patent board at least up to a point that the phrase physical fitness or physical fitness level is a broad term and the specification doesn't really go about defining what that means or what it should be confined to, and so there can be all kinds of indicia of physical fitness that can count and height and weight go to BMI, and so height and weight obviously are things that can account for physical fitness, so under these circumstances, why can't stride length and weight likewise account for a person's physical fitness? So, your honor, our position is that, again, those things contribute. The claims just require more, it requires the exertion levels in some way to be based on the level of physical fitness, and as we explained in our brief, height... But that doesn't make sense, so cardiac metrics, you think, would suffice, right? Your construction includes cardiac metrics. Why isn't that SAT score in your example? Why isn't cardiac metrics the SAT score in your exact example? Because your honor, the specification and the extrinsic sources and the experts all agree that that is a level of physical fitness, the same way strength may be, muscular strength, muscular endurance, those are kind of the next... Height, weight, I mean, when I go to the doctor, they measure my height, they measure my weight, I mean, they're doing that for the purposes of assessing my fitness, are they not? Certainly. So you will agree, then, that those are components of physical fitness as we understand them, and probably some of the most obvious ones. Sure, they're components, but as we explained in our brief, an individual who's 6 foot 250 could be a couch potato or an NFL linebacker, those aren't enough to tell us about the user's level of physical fitness. But your measure is also very reliant on my assessment of it, it is a completely subjective assessment of physical fitness, it is not an objective assessment of physical fitness. That's right, your honor, and we think that subjectivity is really important, it's based on that user's feeling, and the specification talks about that, when they're exercising, it's directly related to that user's fitness level. I'm not sure linebackers are all that fit, I don't know about you, but I've seen some 300 pound linebackers, and when they accidentally get the football, it's like a calendar when they're running down the field with it, it's like clocking them on a calendar. So I'm not positive your example is on brand for you, but keep going. Sure, so even setting aside the claim construction issue, we think the board made two additional errors in its anticipation analysis, first, it treated Amano's 10% speed increase protocol as if it were some sort of individualized fitness-based regimen, we don't think that was proper. No matter what the individual's fitness level is, they will always get a 10% increase in speed, which they call pitch, and that's important because it's almost exactly the same as the reference that the applicant overcame during prosecution history, Lou Bell. Lou Bell was directed to a prescribed exercise test, and Nike argued that... The increase in pitch in Amano, that necessarily leads to the exact same increase in exercise intensity, isn't that right? In Amano. Yes, Your Honor. So exercise intensity, it's not exactly a model of clarity in the Amano reference, but what's happening there is exercise intensity is calculated after the fact. They take pitch, which is footsteps per unit time, times stride length... I mean, here we are in a fact-finding situation where we have to give substantial evidence review to the board's finding here, and my understanding is the initial exercise intensity that's calculated is based on a person's different physical characteristics. I know you don't think it's based on their fitness level, but at least it's on these physical characteristics, and if that's true, then why wouldn't it also be true that the excessive exercise intensity levels, you know, up 10% each time, are also likewise tethered to, predicated on, a person's physical characteristics? So respectfully, Your Honor, we disagree that the initial speed of the runner is dependent on any of their attributes at all. Amano just tells the individual to run. There's no initial metric for that. Sure, but the exercise intensity level is based on stride length, pitch, and weight, is it not? Yeah, and that's calculated afterward. So it's almost like if you're riding the exercise bike, you see how many calories you burn after. That information, that exercise intensity, it's in watts, it's a power measurement. It's never fed back at any point to how the user is prompted to exercise. So that exercise intensity is never part of telling the user to run faster. It's an after-the-fact calculation. The only prompt that the user gets is a 10% increase, always, for every user, regardless of their fitness level, and that's just like the Lubell reference that Nike overcame during prosecution history. Lubell was 4 miles an hour, 6 miles an hour, 8 miles an hour for everyone, same thing. They calculated calories after the fact, just like exercise intensity is calculated after the fact here. There's a separate error in the board's anticipation analysis, and that's its combination of distinct embodiments. There were two physical devices that were different, different embodiments, and the only evidence in the record that Lululemon points to, that the board relied on, is the fact that the output from embodiment 1 can be used as an input for embodiment 4. So let's assume the Amano reference does, in fact, link the two embodiments together. You use them together, you combine them. Why isn't that good enough? It's such that it's not really a reference talking about two disparate embodiments and now the fact finder is combining them together and saying that's a 102. The reference expressly links the two different disclosed embodiments together, as performed together. So in that hypothetical, Your Honor, we think there would still be the error of the fact that the prompts that Amano was giving the users aren't based on the user's level of physical fitness. It's the same 10% for everybody. So the combined embodiment is a separate error and that affects claim element 1D as well. So that anticipation analysis has, we think, the claim construction error, then the fact that the 10% increases aren't based on the user's level of physical fitness, and then separately improper combination of embodiments. We don't think that's enough under Blue Calypso to just say the output of one is the input of another. If I'm in a restaurant and I'm paying my bill, I want to add 20% tip and sadly I need to use my calculator for that. They take that tip, put it into the payment terminal. That doesn't mean all of a sudden that my calculator and the payment terminal are part of the same apparatus. And that's exactly what we have here. Amano simply- When you file a continuation application, you still get the priority date of the parent application filing date. It's a continuation. We think that would be fundamentally different than what the disclosure is in Amano. We don't think that they would be able to get a continuation application for that because that's not what's disclosed in the specification. Okay, quickly, we think the obvious misground also has an error there. The board relied on generic statements about improving communication. We don't think that's enough. There was no evidence in the record that the specific teachings of Gorman and Flack that a skilled artisan would have been motivated to take those teachings and modify the specific embodiments in Amano. That's what was required. There was expert testimony that the board relied on, the Lynch Declaration, for example. That's right, Your Honor. And part of the reason we don't think substantial evidence supports that determination is because the board overlooked his subsequent deposition testimony where he walked a lot of that back. He said a software change would be necessary to combine them. He said that the shared wire theory was not disclosed, there was no communication path problem, and importantly, he found no fault with Amano. So there was never a basis. Well, the fact that he didn't find fault with something doesn't mean that you can't improve upon it. Sure. But that testimony, we think, was indicative of his kind of hindsight analysis. That's a fact question. I mean, in fact, the board relied upon his declaration, which clearly, standing alone, is substantial evidence. You're saying his later deposition testimony cut back on that. I mean, really, it sounds like you're just questioning the board's decision on that fact issue. Respectfully, Your Honor, we think the board is required to grapple with the contrary evidence that we put in front of them, and it doesn't appear from the decision that we did that. So you think that's an APA violation, in fact, then, really? Because you're arguing it can't be it's a substantial evidence problem because there is substantial evidence in the form of his declaration. You're saying it's not fair somehow, and the board erred in doing its job under the APA because there was contrary evidence that it didn't expressly talk about. So we think that the Andrea Electric's case that we cited in our brief, where there was an obvious misdetermination, this court reversed because the board failed to, quote, address any of the specific motivation issues contested by a patent owner, including that the base reference shows a need for improvement in non-stationary environments. We think that case is directly on point. The board has to at least address the arguments that Nike has made, and that case was reversed on substantial evidence grounds. We'll save the rest of our time for rebuttal. Mr. Lloyd, please proceed. May it please the court, Seth Lloyd for Lululemon. The court should affirm, because the board's claims scope analysis tracks concessions from Nike and its own expert about what these claim to mean, and because the record fully supports the board's fact findings. The board never adopted the construction that Nike attacks, where the board supposedly eliminated a physical fitness level from the claims and rewrote them to focus just on height and weight. The board just recognized what the parties have always agreed on here, which is that physical fitness is multifaceted and can include, in at least some fashion, physical characteristics like sex, age, height, and weight. Nike's expert... Well, what is a physical fitness level? Does that suggest... I don't know. How many push-ups can you do in a minute? How many sit-ups can you do in a minute? Would that be a physical fitness level? Maybe, I think is the best answer to that question. But I guess... What I think you're pointing to in Amano is stride length and weight, period. And I don't really know why stride length, what that has to do with physical fitness, necessarily. And then secondly, I don't know why those two components together automatically disclose a physical fitness level. I want to bracket that it's just stride length and weight. The board found that Amano ties those also to heart rate, so there is that as well in Amano. But even just looking at stride length and weight, our expert explained, and Amano itself expressly discloses as well, that stride length is related to a user's height. And height and weight are well known as factors that can be used to evaluate body composition. And a user's body composition, in their own reference, is one of the core components of physical fitness. Physical fitness can include cardiorespiratory endurance, which is what they want the court to focus on, but it can also include body composition. Their brief concedes the same thing. Body composition is well known as an element of physical fitness. I think what the other side is skipping over slightly is the way this claim is structured. The claim requires prompting exertion levels. It doesn't say prompting physical fitness levels. You prompt the exertion level, and the exertion level is based on a level of physical fitness. And the reason that distinction matters, Judge Chen, is if you look at the example in their own patent. The example is to prompt users at easy, medium, or hard. That's it. And it's the same prompt for every user. Every user gets the exact same prompt, easy, medium, or hard. But the patent says, well, the reason that is based on a physical fitness level is because each user is going to exercise at a different easy, medium, or hard level. And the board found that Amano discloses the same thing, or something that's comparable. And at least a person of skill in the art would have understood that to be comparable to what is claimed. Because the exercise, I think in two ways, and some of the questions earlier touched on this. Both the definition of exercise intensity is defined based on height, stride length, which relates to weight. And the board found also is correlated to heart rate. And the initial intensity, which I think is some of the discussion already touched on. The initial intensity, Nike concedes that users can choose their own initial exercise intensity. And the board found, and our expert explained, that a person of skill in the art would have understood that that initial exercise intensity is also based on a user's physical fitness level. And because the initial exercise intensity is based on the fitness level, then each of the 10% increases that come after would also be based on that. Because Amano is basically saying, run 10% harder than you were already running. Because the initial level is based on physical fitness level, then each 10% increase is also based on. But all of this, I think all of these, what we're now talking about is the board's fact findings about Amano. This is a question of fact, and the board had both. Can I ask you to respond to counsel's argument suggesting that the board failed to consider deposition testimony that undermined the declaration on this case? Yeah, I think that was raised in the context of the other side's obviousness argument. And the board spent pages walking through both sides' arguments on obviousness. The other side, Nike, focused primarily on this argument that the prior art is about wireless signals. Why don't you show us where the board went through this? And in particular, did they discuss the deposition testimony, as Judge Batten asked? Yeah. So I'm not sure. I'm not sure. I'd have to go back and look to see if they highlighted exactly whatever deposition testimony was referred to, Chief Judge Moore. But the board cited both sides' evidence here. So it's at Appendix 42 to Appendix 46. These are the pages where the board walked through both sides' arguments and recognizes that Nike is disputing whether a person of skill in the art would take what Nike said were teachings about wireless devices and would apply them in the context of wired devices, which Nike said Amano is focused on. And the board found, one, that Amano is not limited to wired devices. In fact, Amano includes examples that are both wired and wireless. And the board found, based on our expert, crediting our expert at least his declaration, that a person of skill in the art would have understood that the teachings for wireless are equally applicable to wired. And in fact, cited their own experts' concessions, Nike's experts' concessions, that encoding of signals is something that applies. Persons of skill in the art would understand encoding applies for both wired and wireless signals. So I see primarily, I think, on pages 45 and 46, is that where you agree that primarily the board is addressing and referring to and relying upon the Dr. Lynch declaration? Yes. And before that, on 43 and 44, the board is citing and acknowledging Nike's counterarguments, Chief Judge Moore. But counterarguments with specific reference to Dr. Lynch's, what Nike would argue, changed testimony? Yeah. So I'd have to look back specifically at these sites to see. I know the board is citing deposition testimony, for example, at 43. You can see, based on the sites there, I don't remember if that's the exact changed testimony that the other side is alleging. But I think, ultimately, the answer is, Chief Judge Moore, that it does not matter. The board did what this court has said is sufficient, at least if there's an APA challenge, which it's not clear that the other side is saying this is an APA challenge. But the board acknowledged kind of the arguments on both sides. And then the board credited our expert and said, you know, for these reasons, we find, for the foregoing reasons that's at the bottom of 46, it made a finding of fact. And then, on substantial evidence, whether there may be some testimony or evidence that the other side thinks supports their view is not enough to show a lack of substantial evidence, when there is evidence going the other way, including the express disclosures in the prior art, where Amano describes both wired and wireless devices, and where our expert explained, and their own expert conceded that the teachings that they were disputing would be only relevant to wireless devices, also are applicable to wired devices. I did just briefly want to touch on the other side, raise this argument about anticipation and improper combination of embodiments. The board found that these are not distinct embodiments, that, in fact, Amano expressly links the embodiments. Amano's own teachings directly support that finding. Amano says, at column 19, when talking about embodiment 4, use the teachings of embodiments 1 through 3 to do the first part, and then apply what comes next. And then our expert testified in his declaration, in that deposition, that, in fact, a person of skill in the art would understand that these are not distinct devices, that Amano is really talking about just one device, and gives different examples of interfaces for that one device, but that it is a uniform device. Again, on the question of fact and substantial evidence, that's more than sufficient to support the board's findings. I'm happy to answer any other questions the court has. Otherwise, we'd ask that you refer. Okay, thank you, Mr. Lloyd. Mr. Bowling, you have a little bit of a roll call. Just a couple of quick things, Your Honors. So on the first point Lula Lemon's counsel raised, suggesting that there wasn't somehow claim construction here, we think that's pretty clear for the reasons we laid out in our brief. It's a five-page section of the final written decision. The board says it's imbuing some clarity into the claims. It's a core matter for resolution as to whether attributes constitute a level of physical fitness, defines what is and isn't within that, and then says, with that understanding in mind, we're going to evaluate the grounds of unpatentability. So to us, very clear that there was claim construction here. And then the last point, the final written decision never once cited Nike's surreply or Dr. Lynch's second deposition transcript at all. And the second deposition transcript's important because there was a declaration that came in after our response. We took another deposition. He gave all sorts of admissions that undermined his analysis, clarified those thoughts, and the board never cited to it, never dealt with it once. And we think that fails substantial evidence review. All right. Thank you both counsel. This case is taken under submission.